USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/26/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MASHUD PARVES RANA,

                    Plaintiff,

-against-

MONIRUL ISLAM and FAHIMA
TASHINA PROVA,

                    Defendants.

---

14-Cv-1993 (SHS)

FINDINGS OF FACT &
CONCLUSIONS OF LAW

SIDNEY H. STEIN, U.S. District Judge.

    Mashud Parves Rana brings this action against his former employers, Monirul Islam and his wife, Fahima Tashina Prova, for violations of the Trafficking Victims Protection Reauthorization Act ("TVPA"), 18 U.S.C. § 1589 et seq., the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New York State Labor Law ("NYLL"), N.Y. Labor Law § 190 et seq., and for breach of contract. Rana alleges that the defendants lured him to the United States to work as their domestic servant during Islam's time as Bangladeshi Consul General in New York City. Plaintiff claims that during his employment defendants refused to pay him, maintained him in a state of slavery, and physically and emotionally abused him. After protracted proceedings and defendants' repeated failure to comply with discovery orders, the Court entered a judgment of default against defendants pursuant to Fed. R. Civ. P. 37. In light of the default judgment, the well-pleaded allegations in Rana's complaint are deemed admitted, and only

Rana's damages remain to be determined. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).[1]

A damages hearing was held on September 7, 2016 at which Rana and his counsel were present. Despite being repeatedly notified in advance of the proceeding, defendants did not appear. At the hearing Rana, his physician Dr. Allison Schachter, and clinical psychologist Dr. Chitra Raghavan testified regarding Rana's experience working for defendants and its effect on his health and wellbeing.

Rana testified that defendants never paid him during his eighteen months of employment and that when he asked for his pay Islam told him "he bring me [to the] United States, that is enough for you. Why are you asking for [a] salary?," Tr. at 14-15, and "hit" him, *id*. at 27. Rana also testified that he was required to work from shortly after 6:00 a.m. until between 1:00 and 3:00 a.m. with only brief breaks, despite defendants' prior statement that he would have time to also work outside of their home. *Id*. at 8, 15, 21. According to Rana's testimony, he was fed only defendants' leftovers and for a time was required to sleep on defendants' kitchen floor. *Id*. at 25-26. Further, Rana testified that Islam seized Rana's passport and visa and told Rana that he would be killed by the police if he left defendants'

---

[1] Rana's allegations and the procedural history of the case are recounted in great, perhaps fulsome, detail in the Court's opinions and orders denying defendants' motion to dismiss, 305 F.R.D. 53 (S.D.N.Y. 2015), granting defense counsel's motion to withdraw, No. 14-cv-1993, 2016 WL 859859 (S.D.N.Y. Mar. 1, 2016), and granting Rana's motion for default judgment, No. 14-cv-1993, 2016 WL 2758290 (S.D.N.Y. May 12, 2016).

home without identification. *Id*. at 10, 23. As a result of defendants' conduct, Rana and his physician testified, Rana suffers from headaches, depression, and feelings of hopelessness. *Id*. at 38, 43.

Based on the testimony given and exhibits entered into evidence at the damages hearing, the Court makes the following findings of fact and conclusions of law.

1. Time Worked

The Court finds that Rana worked an average of seventeen hours per day for Islam and Prova from September 12, 2012 through March 2, 2014. No employer records have been entered into evidence. Where, as here, an employer has failed to maintain adequate records of an employee's time worked as required under the FLSA, "a plaintiff employee must produce only 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 331 (S.D.N.Y. 2009) (*quoting Reich v. S. New England Telecomm., Corp.*, 121 F.3d 58, 67 (2d Cir. 1997)). Such evidence can include the employee's "own recollection." *Id*. Rana has satisfied that standard through detailed and credible testimony about his working conditions. Although the number of hours is extraordinary – after all, there are only 24 hours in a day – this Court has found Rana's testimony credible and courts in domestic servitude cases have often credited similar allegations. *See, e.g.*, *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 588 (S.D.N.Y. 2012) (plaintiff "regularly worked sixteen-hour days"); *Mazengo v. Mzengi*, 07-cv-756, 2007

WL 8026882, at *7 (D.D.C. Dec. 20, 2007) (plaintiff worked "more tha[n] sixteen hours per day").

    2.   Breach of Contract

Rana seeks breach of contract damages at the "prevailing wage" for his labor under an employment contract he allegedly entered into with defendants. His complaint alleges that Prova had him sign documents in English that he did not understand, which Prova told him were required to obtain his visa. Compl. ¶ 27. The complaint also alleges that Rana and defendants "entered into a written contract, whereby, upon information and belief, the Parties agreed to the terms mandated by the Foreign Affairs Manual" in order to obtain Rana's visa. *Id*. ¶155. At the time Rana received his A-3 visa, the State Department's Foreign Affairs Manual provided that "the personal employee of an alien of a foreign mission in the United States" may obtain an A-3 visa if, among other things, the employee submits an "employment contract . . . signed by both the employer and the employee" that "must state the hourly wage to be paid to the domestic employee," which "must be the greater of the minimum wage under U.S. Federal and state law, or the prevailing wage for all working hours." Foreign Affairs Manual 9 FAM 41.22 N4, N4.4(b)(3) (Dep't of State 2011); Doc. No. 114, Shea Decl., Ex. 6. According to a database maintained by the U.S. Department of Labor's Office of Foreign Labor Certification, the "Level 1" prevailing wage for "Maids and Housekeeping Cleaners" in the New York City metropolitan area was $9.74 from the beginning of Rana's employment through June 2013, and $10.32 thereafter. *See* Shea Decl., Exs. 2, 3.

An employment contract promising Rana the greater of the minimum wage and the "prevailing wage" has not been entered into evidence, and is alleged to exist only upon information and belief. But "allegations on information and belief may be sufficient . . . on default judgment where they state facts primarily within the defendant's knowledge." *Flanagan v. North Star Concrete Const., Inc.*, No. 13-cv-2300, 2014 WL 4954615, at *6 (E.D.N.Y. Oct. 2, 2014). Given Rana's allegations, the fact that he was not fluent in English, and the power disparity that existed between Rana and defendants, the Court finds that the terms of the employment contract were primarily within defendants' knowledge. And the fact that Rana was issued an A-3 visa – which under State Department guidelines could not have occurred without the Department receiving a contract providing for the greater of the minimum wage and the "prevailing" wage – provides further support that such a contract was entered into.

Accordingly, the Court finds that defendants contracted to pay Rana the prevailing wage and that he is entitled to breach of contract damages of $9,047.96 – the extent to which the prevailing wage exceeded the minimum wage Rana was entitled to pursuant to the FLSA and NYLL, as set forth below. *See* Shea Decl., Ex. 5; *Gurung*, 851 F. Supp. 2d at 590.

3.  Minimum Wage

The FLSA requires employers to pay their employees the federal minimum wage. *See* 29 U.S.C. § 206. The FLSA also permits an employee to recover any higher minimum wage to which he may be entitled under state law. *See id.* § 218(a). During Rana's employment, the New York state

5

minimum wage equaled the federal minimum wage of $7.25 per hour through December 30, 2013 and at $8.00 per hour exceeded the federal minimum wage thereafter. *Compare* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1(a)(2); (a)(3) *with* 29 U.S.C. § 206(a)(1)(c). Rana is therefore entitled to damages calculated at the New York minimum wage for the first 44 hours per week that he worked without payment, after which he is entitled to overtime pay under the NYLL. *See* N.Y. Labor Law §§ 170; 663(1); *Gurung*, 851 F. Supp. 2d at 589. That amount equals $24,834.50. *See* Shea Decl., Ex. 1.

### 4.   Overtime Wages

The NYLL requires employers of domestic workers to pay "at least one and one-half times the worker's normal wage rate" for all hours worked exceeding 44 per week. N.Y. Labor Law § 170. Rana is therefore entitled to one and one-half times his contractual rate of the prevailing wage for the 75 hours per week that he worked beyond 44 hours per week, totaling $85,911.39. *See* Shea Decl., Ex. 1.

### 5.   Spread of Hours

Under the NYLL, an employer must pay an employee who works more than ten hours in one day an additional hour of pay at the state minimum wage, referred to as "spread of hours" pay. *See* 12 N.Y. Comp. Code R. & Regs. § 142–2.4; *Gurung*, 851 F. Supp. 2d at 591. Based on the Court's finding that Rana worked more than ten hours per day for each of his 536 days of employment, he is entitled to $3,931.75 in spread of hours damages. *See* Shea Decl., Ex. 1.

6

6.   NYLL Liquidated Damages

The NYLL provides for liquidated damages of 100% of the total wage underpayment under the NYLL "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Labor Law § 663(1). Rana has asserted that defendants' nonpayment of wages was willful, *see* Compl. ¶ 139, and his testimony that Rana "pushed my back, hit me" when he asked for pay, Tr. at 27, supports such a conclusion. "Where a default judgment is entered against a defendant under the FLSA, allegations that the violations were willful are deemed admitted," and the "[t]he standard for willfulness under NYLL does not appreciably differ from that of the FLSA." *Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, No. 13-cv-3061, 2014 WL 2624759, at *3 (S.D.N.Y., June 10, 2014) (internal quotation marks and citations omitted). Rana is therefore entitled to liquidated damages of 100% of his NYLL minimum wage, overtime, and spread of hours underpayment – equal to $114,677.64. *See* Shea Decl., Ex. 1.

7.   FLSA Liquidated Damages

In addition to liquidated damages under the NYLL, Rana seeks $66,062 in liquidated damages under the FLSA – equal to 100% of the underpayment of the federal minimum wage for hours Rana worked. *See* Shea Decl., Ex. 4. "There is no appellate authority as to whether a plaintiff may recover cumulative . . . liquidated damages under the FLSA and NYLL, and the district courts in this Circuit are deeply divided." *Inclan v. N.Y. Hospitality Group, Inc.*, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015).

In this case, the Court adopts the "majority view" that "plaintiffs may recover liquidated damages under both the FLSA and NYLL." *Melgadejo v. S & D Fruits & Vegetables Inc.*, No. 12-cv-6852, 2015 WL 10353140, at *16 (S.D.N.Y. Oct. 23, 2015). Cumulative liquidated damages are appropriate here because the recoveries serve different purposes. Under the FLSA, liquidated damages "are considered compensatory, essentially serving as a form of prejudgment interest," whereas "liquidated damages under the NYLL are punitive." *Gurung*, 851 F. Supp. 2d at 593. Given the extraordinary circumstances of Rana's service to defendants, the Court concludes a punitive aspect to damages is appropriate. The Court therefore awards Rana $66,062 in liquidated damages under the FLSA in addition to liquidated damages under the NYLL.

### 8.   Notice and Record Keeping Violations

Rana alleges that during his eighteen months of employment defendants did not provide him with wage statements and did not inform him of minimum wage and overtime requirements under New York law. *See* Compl. ¶¶ 79-82. During the time of Rana's employment, the NYLL provided that an employee may recover from his employer $100 per week for each payday for which the employee did receive a record of pay and time worked, capped at $2,500. *See* N.Y. Labor Law § 198(1-d) (McKinney's 2010). The NYLL also provided that an employee who is not informed of his hourly and overtime rates within ten days of employment may recover from his employer $50 for each week of the violation, capped at $2,500. *See id.* § 198(1-b). Accordingly, Rana is entitled to $5,000 for defendants' notice

8

and record keeping violations under New York law because he never received a record of his pay and time worked and was never informed of his hourly and overtime rates.

### 9. Emotional Distress Damages

Rana seeks emotional distress damages of $450 per day of servitude, totaling $241,200. The TVPA provides for the award of emotional distress damages to victims of human trafficking and forced servitude. *See* 18 U.S.C. §§ 1584, 1589, 1593(b)(3), 1595; *Gurung*, 851 F. Supp. 2d at 594.  "To determine emotional distress damages, courts are to examine the duration and intensity of the emotional distress" and "also look to other awards in similar cases to ensure that the award is within a reasonable range." *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 24 (D.D.C. 2013) (internal quotation marks and citations omitted).

Based on the evidence presented at the damages hearing, the Court awards Rana emotional distress damages of $241,200. As noted, Rana was forced to work an average of seventeen hours per day, seven days per week, without pay. *See* Tr. at 15-18; Compl. ¶¶ 40-42, 52. He was fed only leftovers and for a period of time was required to sleep on the kitchen floor. Tr. at 18, 25; Compl. ¶¶ 44, 56. Defendants routinely insulted and threatened him, Tr. at 24, seized his identification documents, *id.* at 10, forbid him from making phone calls or otherwise interacting with other people, *id.* at 24, restricted his travel, *id.* at 23-24, and warned that if he left their home the police would "catch" him and "kill" him because he did not have any identification papers, *id.* at 23. *See also* Compl. ¶¶ 47, 55-59. Islam twice

9

physically assaulted Rana, on one occasion knocking him unconscious. Tr. at 27-28; Compl. at ¶¶ 63, 64.

The testimony reflected that, as a result of defendants' conduct, Rana has suffered and continues to suffer from a number of physical and mental afflictions. Dr. Schachter testified that when she first treated Rana – approximately two months after he left defendants – he suffered from "anhedonia," which means "lack of interest . . . in life," as well as "insomnia . . . poor concentration; poor memory; palpitations; chest pain; [and] headaches." Tr. at 43. In addition, Dr. Raghavan concluded on the basis of her five-hour psychological evaluation of Rana that some twenty months after his separation from defendants he continued to suffer physically and mentally. Her evaluation found that, as a result of defendants' abuse, Rana was "unequivocally scarred" and suffers from post-traumatic stress disorder and major depressive disorder. Doc. No. 117, Ex. 2. Dr. Raghavan concluded that Rana has lost interest in friendships and self-care, "lives in an atmosphere of sadness and disappointment," experiences recurrent recollections and terrifying dreams of his abuse, distrusts authority, and suffers from headaches. *Id.* She opined that "[h]e is completely broken," that he will likely continue to experience many of these symptoms for a minimum of two to five years, and that many similar patients have "continuing symptoms" twenty years later. Tr. at 63. Indeed, Rana testified at the damages hearing that many of these symptoms persist, stating that he has "head pain" and "cannot think about anything." *Id.* at 38.

Emotional distress damages of $241,200 – or $450 per day of servitude – is also in accord with awards in similar cases. *See Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 458 (E.D. Va. 2015) ("Plaintiffs have been awarded damages for emotional distress from trafficking subject to forced labor ranging from $410 to $780 per day."); *Doe v. Howard*, 11-cv-1105, 2012 WL 3834867, at *3 (E.D. Va. Sept. 4, 2012) ("In recent cases, Courts have ordered or affirmed emotional distress damages relating to forced domestic labor of trafficking victims ranging from $415 to $800 for each day of forced labor."); *but see Mazengo v. Mzengi*, 07-cv-756, 2007 WL 8026882, at *7 (D.D.C. Dec. 20, 2007) (on similar facts, awarding $250,000 – or approximately $171 per day of servitude – in emotional distress damages). For example, the court in *Gurung v. Malhorta* awarded a victim of forced servitude $500,000 in emotional distress damages under the TVPAA based on very similar facts, equaling approximately $417 per day of servitude. *See* 851 F. Supp. 2d at 594-95. And in another recent case with similar facts, *Carazani v. Zegarra*, the court awarded $433,200 in emotional distress damages under the TVPA, or $400 per day of servitude. 972 F. Supp. 2d at 24-25.

10. Damages Offset

After his escape, Rana with the help of law enforcement discovered two joint U.S. bank accounts in his and Islam's names. Rana testifies that he did not know of these accounts during his employment, *see* Tr. at 31, and that defendants never communicated an intent to pay him after he arrived in the United States, *see id.* at 14-15. Rana has since recovered $13,005 from these

11

accounts. *See id.* at 31; Doc. No. 113, Pl. Br., at 14-15. As Rana concedes, this amount should be subtracted from his damages award. *See* Pl. Br., at 14-15.

11. Punitive Damages

Rana also seeks $430,987.60 in punitive damages under the TVPA, equal to 100% of his compensatory damages – consisting of minimum wage, overtime and spread-of-hours underpayment, breach of contract damages, FLSA liquidated damages, and emotional distress damages, minus his damages offset. Punitive damages are available under the TVPA. *See Ditullio v. Boehm*, 662 F.3d 1091, 1096 (9th Cir. 2011); *Carazani*, 972 F. Supp. 2d at 26. Punitive damage awards should bear a "reasonable relationship to compensatory damages," and "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575, 580 (1996). Courts also consider whether "the harm was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm resulted from intentional malice, trickery, or deceit, or mere accident." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

Punitive damages are clearly appropriate in this case. Defendants' conduct was reprehensible and malicious, evinced a disregard for Rana's physical and mental wellbeing, and continued for approximately eighteen months. The punitive damages set at the 1:1 ratio to compensatory damages

12

sought by Rana is consistent with several awards in forced domestic servitude cases with similar facts. *See Lagasan*, 92 F. Supp. 3d at 458; *Carazani*, 972 F. Supp. 2d at 26-27; *Shukla v. Sharma*, No. 07-cv-2972, 2012 WL 481796, at *16 (E.D.N.Y. Feb. 14, 2012); *Canal v. Dann*, 09-cv-03366, 2010 WL 3491136, at *4 (N.D. Cal. Sept. 2, 2010). The Court adopts that ratio and awards Rana punitive damages of $316,309.96 – an amount equal to the $430,987.60 that Rana seeks, minus the $114,677.64 the Court awards Rana in liquidated damages under the NYLL. As noted above, liquidated damages under the NYLL are "punitive," *Gurung*, 851 F. Supp. 2d at 593, and the Court therefore subtracts this amount from Rana's punitive damages to avoid cumulative recovery.

12. Prejudgment Interest

Rana is entitled to 9% prejudgment interest on his $230,398.24 in damages under his state labor law and breach of contract claims (after the damages offset). *See* N.Y. C.P.L.R. §§ 5001, 5004; N.Y. Labor Law § 198(1-a). The prejudgment interest period commences on June 6, 2013, the midpoint of Rana's 536-day employment period. *See* N.Y. C.P.L.R. § 5001(b); *Liu v. Jen Chu Fashion Corp.*, No. 00-cv-4221, 2004 WL 33412, at *5-6 (S.D.N.Y. Jan. 7, 2004). Accordingly, the Court awards $68,627.11 in prejudgment interest.

13

13. Conclusion

In sum, the Court awards damages of $922,597.31, as follows:

| CLAIM | AMOUNT |
|---|---|
| Minimum Wage | $24,834.50 |
| NYLL Overtime | $85,911.39 |
| NYLL Spread of Hours | $3,931.75 |
| NYLL Liquidated Damages | $114,677.64 |
| FLSA Liquidated Damages | $66,062 |
| Breach of Contract | $9,047.96 |
| Recordkeeping Violations | $5,000 |
| Emotional Distress | $241,200 |
| Damages Offset | ($13,005) |
| Punitive Damages | $316,309.96 |
| Prejudgment Interest | $68,627.11 |
| **TOTAL** | $922,597.31 |

The Clerk of Court is directed to enter judgment in favor of Rana against defendants Monirul Islam and Fahima Tashina Prova in the amount of $922,597.31.

Dated:  New York, New York
        September 26, 2016

SO ORDERED:

Sidney H. Stein, U.S.D.J.

14